United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ASHTON CLONINGER, et al.,

Defendants.

Case No.: 3:10-cv-04040-JCS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 66].**

## I. INTRODUCTION

The United States of America ("Plaintiff" or "Government") filed this action to reduce to judgment certain tax assessments made against Ashton Cloninger ("Defendant"), and to collect a portion of the proceeds from the sale of the property located at 3039 St. James, Belmont, California ("Property") in part satisfaction of Defendant's tax liability.[1] The parties have stipulated that Defendant owes the Government $309,685.24 in federal tax liability. The parties have also stipulated that the Government has valid tax lien on Defendant's interest in the Property, and that 26 U.S.C. § 7403 entitles the Government to enforce its lien against the Property. The Property has been sold, and sale proceeds in the amount of $532,951.97 have been deposited with the Clerk of Court.

On October 5, 2012, the Government filed the instant Motion for Summary Judgment ("Motion") to collect one-half of the sale proceeds deposited with the Clerk of Court. Plaintiff

[1] Defendant's former wife, Sylvia Cloninger ("Ms. Cloninger"), as well as the Bank of America and the State of California Franchise Tax Board, were also joined as defendants in this action as parties which may have claimed an interest in the property. *See* Dkt. No. 1 (Complaint) ¶¶ 6-8; 26 U.S.C. § 7403(b). On May 13, 2011, the Clerk of Court entered default as to defendant Bank of America. *See* Dkt. No. 25. On November 2, 2010, the California Franchise Tax Board disclaimed any interest in the proceeds to the sale of the Property. Dkt. No. 6. Ms. Cloninger's interest in the property is discussed within this Order.

also disclaims any claim to the remaining proceeds, and requests the Court to dismiss the case and direct transfer of the remaining proceeds to the Superior Court of California, County of San Mateo--the court where Defendant's and Ms. Cloninger's dissolution proceedings are pending--to be distributed in connection with the Cloningers' property division. No party disputes the Government's entitlement to collect at least one-half of the sale proceeds. Defendant contends, however, that the Government may not take less than Defendant's full interest in the sale proceeds, which Defendant argues is greater than one-half due to his separate property contributions to the Property. The Motion came on for hearing November 30, 2012, at 9:30a.m. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED.[2]

## II. BACKGROUND[3]

Defendant and Ms. Cloninger were married in 1984 and purchased the Property at issue in 1985. Declaration of Ashton Cloninger ("Ashton Decl.") ¶ 2-3; Declaration of Sylvia Cloninger ("Sylvia Decl.") ¶ 3. In September 1997, Defendant and Ms. Cloninger permanently separated. Ashton Decl. ¶ 7; Sylvia Decl. ¶¶ 4-5. Ashton Cloninger filed a petition for the dissolution of marriage on September 26, 1997, but did not pursue the dissolution action. Ashton Decl. ¶¶ 9-10; Sylvia Decl. ¶ 4. When Ms. Cloninger filed a petition for the dissolution of the marriage on June 6, 2008, the two dissolution actions were consolidated. Sylvia Decl. ¶ 6. The marriage was formally dissolved on March 27, 2012. Ashton Decl. ¶ 14; Sylvia Decl. and Exh. D thereto.

During the period of separation between 1997 and 2012, Ms. Cloninger remained in the Property while Defendant moved elsewhere. Ashton Decl. ¶ 8. During this time, Defendant paid for all costs associated with the Property, including the mortgage payments, homeowners association dues, real property taxes, and for major repairs. Ashton Decl. ¶ 15 and Exh. B (Sylvia Cloninger's Declaration in State Court Dissolution Action) at 4-5. Since their separation in 1997, Defendant and Ms. Cloninger have filed separate tax returns. Ashton Decl. ¶ 12.

---

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

[3] Unless noted otherwise, the facts included herein are those facts which the parties stipulated are undisputed or which the Court found to be undisputed.

During the dissolution proceedings, the state court ordered Ms. Cloninger to list the Property for sale. Sylvia Decl. Exh. B (Findings and Order After Trial) ¶ 7. In the order dissolving the marriage dated March 27, 2012, the state court wrote that Ms. Cloninger "shall receive one-half of any proceeds from the sale of the house and $15,000 from Husband's one-half share of the proceeds shall be used to pay reimbursement of property taxes and additional sums owed to her." Sylvia Decl. Exh. D at 4. In two orders prior to the order dissolving the marriage, the state court reserved jurisdiction over any disputes arising with respect to the distribution of funds from the sale of the Property. *See* Sylvia Decl. Exh. B (Findings and Order After Trial (Dec. 14, 2010)) ¶ 7 ("The Court reserves jurisdiction over any disputes that may arise with respect to the sale and distribution of funds from the sale of the marital residence"); Sylvia Decl. Exh. C (Attachment to Findings and Order After Hearing (March 3, 2011)) ¶ 4 ("The Court shall retain jurisdiction over all aspects of the listing, sale and division of the sale proceeds of 3039 St. James Road, Belmont, California.").

During the period of separation, Defendant became delinquent on his federal tax liability. On September 8, 2010, while the dissolution proceedings were pending in state court, the Government filed the instant action. *See* Dkt. No. 1 ("Compl.") ¶ 1. Defendant stipulated on February 7, 2012 that he owed $309,685.24 to the Government plus statutory interest from August 31, 2010. Dkt. Nos. 42-43 (Stipulation and Order) ¶¶ 2-3.

After the Property was sold, the sale proceeds in the amount of $532,951.97 were deposited with the Clerk of Court. Dkt. No. 65 (Receipt). This was the stipulated amount after paying the property taxes, the mortgage recorded in deed of trust, and the fees associated with the sale. *See* Dkt. Nos. 55-56 (Stipulation and Order) ¶ 12. On July 18, 2012, all interested parties, including Defendant, stipulated that the Government "has valid and subsisting tax liens on all property and rights to property of Defendant Ashton Cloninger," and that "26 U.S.C. § 7403 entitles the United States to enforce its liens against the Subject Property in order to apply the proceeds towards the tax liabilities of Defendant Ashton Cloninger." *Id.* ¶¶ 8-9.

On October 5, 2012, Plaintiff filed the instant Motion for Summary Judgment. Dkt. No. 66 ("Motion"). The Government requests the Court to allocate one-half of the sale proceeds

deposited with the Clerk of Court to the Government, and transfer the remaining proceeds to the state court to be allocated pursuant to the state court's property division. In support of its Motion, the Government filed as an exhibit a "stipulation" between the United States and Ms. Cloninger, where those parties agreed "that the Internal Revenue Service is entitled to (at least) one-half of the net proceeds from the sale of the Subject Property, which is equal to $266,475.98." Declaration of Thomas Newman ("Newman Decl.") Exh. 5 ¶ 10. The Government disclaimed an interest to the remaining proceeds from the sale of the Property. *Id.* The United States and Ms. Cloninger further agreed "to transfer the remaining $266,475.99 to the Clerk of the Court for the Superior Court for San Mateo County, 400 County Center, Redwood City, California 94063, and the Defendants can resolve the State law claims as part of cases numbered FAM0099539 and FAM044728." *Id.* ¶ 11.

Defendant opposes the Government's Motion. Dkt. No. 68 ("Opp."). Defendant does not dispute the Government is entitled to at least one-half of the sale proceeds, but does argue the Government is not entitled to take less than the full amount of Defendant's property interest in the sale proceeds. Opp. at 3. Defendant contends he has greater than one-half interest in the sale proceeds because during his separation with Sylvia Cloninger, he contributed his separate property to pay for all costs associated with the Property, such as mortgage payments, housing association dues, property taxes, and major repairs. Opp. ¶ 5; Ashton Decl. ¶ 15 and Exh. A thereto. Therefore, Defendant argues, his property interest in the sale proceeds is measured by his one-half community property interest plus his right to "equitable subrogation" as measured by the payments he made out of his separate property. Defendant makes this argument to guard against the Government's subsequent pursuit of the deficiency of his tax debt. Opp. at 5 ("plaintiff's disclaimer will leave money on the table while at the same time leaving plaintiff free to hound defendant Ashton Cloninger with the unrequited balance of the tax lien").

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a

United States District Court
Northern District of California

genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "*Celotex* requires that for issues on which the movant would bear the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact," that is, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation omitted). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

**IV. DISCUSSION**

In this action, the Government now seeks only one-half of the proceeds of the sale of the Property. It has disclaimed any interest in the remaining proceeds. No party disputes that the Government is entitled, at least, to one-half of the proceeds. The Government is entitled to enforce its liens against the Property in order to apply the proceeds toward the tax liabilities of Ashton Cloninger. *See* 26 U.S.C. § 7403; Dkt. Nos. 55-56 (Stipulation and Order) ¶ 9. Therefore, the Court finds the Government is entitled to one-half of the proceeds.

Defendant's only contention is that the Government cannot take less than his purported interest of the sale proceeds. Assuming *arguendo* Defendant does have greater than one-half interest in the sale proceeds, Defendant has cited no case or statute which prohibits the Government from collecting *less* than the taxpayer's entire property interest in the sale proceeds. Contrary to Defendant's contention, *United States v. Rogers*, 461 U.S. 677 (1093) ("*Rogers*"), does not stand for this proposition. The Supreme Court in *Rogers* held that the Government is entitled to force the sale of a home to collect on a federal tax lien, even if a non-debtor spouse also owns a separate property interest in the home. *Id.* at 680. The Court further held that while a court may decline to order the forced sale by exercise of equitable discretion, such discretion "should be exercised rigorously and sparingly, keeping in mind the Government's paramount

interest in prompt and certain collection of delinquent taxes." *Id.* at 711. The holding in *Rogers* had nothing to do with Defendant's argument here--namely, that the Government must collect a debtor's entire property interest in the proceeds derived from the sale of the home.

No legal principle prevents this Court from allocating one-half of the sale proceeds to the Government based on Defendant's unsubstantiated contentions that he is entitled to more. This Court is not, as Defendant suggests, "remand[ing] the matter of federal tax lien enforcement to the state's family court." Opp. at 4. This Court's judgment is fully dispositive of the federal tax lien at issue in this case. Nor is the Court defining Defendant's property interest contrary to federal law principles, as Defendant implies by citing *Drye v. U.S.*, 528 U.S. 49 (1999). In *Drye*, the Supreme Court held that "the [Internal Revenue] Code and interpretative case law place under federal, not state, control the ultimate issue whether a taxpayer has a beneficial interest in any property subject to levy for unpaid taxes." *Id*. at 58. The issue in *Drye* was whether an insolvent taxpayer's inheritance qualified as "property" or a "right to property" which the federal government could collect to satisfy a tax lien, despite an Arkansas law which permitted the taxpayer to disclaim his inheritance to effectuate the transfer of the inherited property directly from the deceased to the next lineal heir. *Id.* at 52. In *Drye*, there was a direct conflict between Arkansas law and federal law when applied to define whether the taxpayer's inheritance was "property" subject to federal tax liens. On the one hand, Arkansas law created a "legal fiction" that the disclaimant predeceased the decedent, and therefore, never held an interest in the property at issue. *Id*. at 53 (citing Ark. Code Ann. §§ 28-2-101, 28-2-107 (1987)). Federal law, on the other hand, recognized the taxpayer's property interest in the inheritance because the taxpayer had complete authority to either inherit or disclaim the property. *Id*. at 61. The Court in *Drye* was faced with a conflict of between state and federal definitions of the taxpayer's property. There is no such conflict here. The Government only seeks to collect Defendant's property as defined by state law; there is no federal principle which defines Defendant's property rights otherwise. The principles articulated in *Drye* are therefore irrelevant to this case.

There were two federal claims in this case. The first, to reduce the tax assessments to judgment, has been disposed of by the parties' stipulation. *See* Dkt. Nos. 42-43 (Stipulation and

Order) ¶¶ 2-3. The second, foreclosure of the Government's tax lien, is disposed of by this Order. By its stipulation, the Government only seeks one-half the proceeds--an amount to which all parties agree the Government is entitled. That one-half interest will be awarded to the Plaintiff. As to the remaining proceeds, the Government has no claim--having explicitly waived on any further claim to those funds. Accordingly, judgment will be entered in favor of the Plaintiff on its lien in the amount of $266,475.98, and the Clerk of Court is directed to pay that amount to the Plaintiff.

The dispute on the remaining funds are matters between Defendant and Ms. Cloninger and raise only issues of state law--including Mr. Cloninger's "equitable subrogation" claim. There are no further federal claims to adjudicate, and the Court declines to exercise pendant jurisdiction over the Cloningers' property division. Those issues are already the subject of the dissolution proceedings at the San Mateo County Superior Court. The Clerk of Court, after paying $266,475.98 to Plaintiff, shall pay the remaining proceeds to the Superior Court to the County of San Mateo, for distribution in accordance with the orders of that court.

## V. CONCLUSION

For the reasons stated above, the Government's Motion for Summary Judgment is GRANTED in its entirety. The Clerk of Court is directed to pay one-half of the sale proceeds ($266,475.98) to the United States and transfer the remaining proceeds to the Superior Court of California, County of San Mateo, 400 County Center, Redwood City, California 94063, to be distributed by that court in connection with cases FAM044728 and FAM099539. The Clerk of Court is also directed to report to the Court on the status of this transfer within THIRTY (30) days from the date of this Order.

IT IS SO ORDERED.

Dated: December 3, 2012

Joseph C. Spero
United States Magistrate Judge



United States District Court